IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| 800 BELL HOLDINGS, LLC | § § § | |
| VS. | § § § § | C.A. No. 4:25-cv-04072 |
| BELL BUSINESS INVESTMENTS LLC and ISAAC JACOBWITZ | § § | |

**UNSWORN DECLARATION**
**UNDER PENALTY OF PERJURY OF THOMAS LEE**

My name is Thomas Lee, my date of birth is June 22, 1967, and my business address is 399 Knollwood Road, Suite 206, White Plains, New York 10603. I declare under penalty of perjury that the following is true and correct:

1. "I am over the age of eighteen (18) years and am fully competent to testify to the matters stated in this Declaration. I am of sound mind and have never been convicted of a felony or misdemeanor involving moral turpitude. I have personal knowledge of the facts and statements contained in this Declaration and each is true and correct.

2. This Declaration is in lieu of an affidavit pursuant to 28 U.S.C. § 1746.

3. I am the Vice President of 800 Bell Holdings, LLC, a Nevada limited liability company ("800 Bell") and am duly authorized by 800 Bell to submit this Declaration. I am a resident and citizen of New York.

4. True and correct copies of the foregoing are attached hereto and incorporated herein for all purposes:

    a. Exhibit 1 is a Secured Promissory Note ("Note") dated December 30, 2022 in the principal amount of $14,500,000.00, and executed by Bell Business Investments, LLC ("BBI"), a Delaware limited liability company, as Borrower, made payable to Shorenstein Properties 800 Bell LLC, a Delaware limited liability company, as Holder ("Shorenstein");

    b. Exhibit 2 is a Limited Guaranty Secured Loan made as of December 30, 2022, and executed by Isaac Jacobwitz, as Guarantor, in favor of Shorenstein, as Lender;

c. Exhibit 3 is a duly certified copy of a December 30, 2022 Deed of Trust, Security Agreement and Fixture Filing by BBI, as Grantor, to First American Title Insurance Company, as Trustee, for the benefit of Shorenstein, as Beneficiary, ("Deed of Trust") filed in the Harris County, Texas Real Property Records on January 3, 2023 under Clerk's Reference No. RP-2023-100, and covering the commercial real property located at 800 Bell Street and the garage at 700 Leland Street/1615 Milam Street, Houston, Harris County, Texas 77002 ("Property");

d. Exhibit 4 is a Note Purchase Agreement ("Purchase Agreement") dated April 25, 2025 by and between 800 Bell, as Buyer, and Shorenstein, as Seller, wherein 800 Bell purchased from Shorenstein the Note, together with all rights, title, interests, lien, security interests governing, guaranteeing, extending, modifying or as security for the payment of the Note, including without limitation, pursuant to the Deed of Trust, Financing Statements, and other Transaction Documents (as defined in Schedule 1 of the instrument), and all claims, suits, causes of action and any other right of Shorenstein against any party, arising under or in connection with any of the Transaction Documents;

e. Exhibit 5 is an April 28, 2025 Assignment and Conveyance by Shorenstein, as Seller, under the Purchase Agreement, to 800 Bell, as Buyer, of all right, title, and interest of, in and to the Note and other loan documents listed on Exhibit A, evidencing that ownership of the Note and the loan documents are vested in 800 Bell;

f. Exhibit 6 is an April 29, 2025 Allonge payable to the order of 800 Bell which is attached to and made part of the Note;

g. Exhibit 7 is a duly certified copy of an Assignment of Deed of Trust ("Assignment") effective as of April 28, 2025 by and between 800 Bell, as Buyer, and Shorenstein, as Seller, relating to all of Seller's right, title and interest in and to the Deed of Trust, filed in the Harris County, Texas Real Property Records on April 29, 2025 under Clerk's Reference No. RP-2025-156813;

h. Exhibit 8 is a May 12, 2025 Notice of Intent to Accelerate sent by 800 Bell's legal counsel, Bradley E. Rauch, to BBI and Jacobwitz;

i. Exhibit 9 is a May 28, 2025 Notice of Demand sent by 800 Bell (through Mr. Rauch) to BBI;

j. Exhibit 10 is a June 30, 2025 Demand for Documentation and Notice of Inspection sent by 800 Bell (through Mr. Rauch) to BBI;

k. Exhibit 11 is a July 9, 2025 Notice of Default sent by 800 Bell (through Mr. Rauch) to BBI;

l. Exhibit 12 is a July 11, 2025 Second Notice of Inspection and Demand for Guarantor Financials sent by 800 Bell (through Mr. Rauch) to BBI and Jacobwitz;

m. Exhibit 13 is a July 14, 2025 Notice of Default sent by 800 Bell (through Mr. Rauch) to BBI;

n. Exhibit 14 is a July 14, 2025 correspondence from BBI's counsel to counsel for 800 Bell;

o. Exhibit 15 is a July 16, 2025 correspondence from 800 Bell (through Mr. Rauch) to Scot Clinton, legal counsel for BBI;

p. Exhibit 16 is a August 6, 2025 Demand for Inspection sent by 800 Bell (through Mr. Rauch) to legal counsel for BBI;

q. Exhibit 17 is an August 11, 2025 Notice of Insurance Default sent by 800 Bell (through Mr. Rauch) to BBI;

r. Exhibit 18 is a September 11, 2025 Fourth Demand for Inspection sent by 800 Bell (through Mr. Rauch) to BBI and its legal counsel;

s. Exhibit 19 is a copy of BBI's Emergency Motion to Consolidate and for Temporary Restraining Order, filed in this proceeding on October 6, 2025.

t. Exhibit 20 is a copy of BBI's Suggestion of Bankruptcy, filed in this proceeding on October 7, 2025.

u. Exhibit 21 is a copy of the order of dismissal from bankruptcy proceedings initiated by BBI in the United States Bankruptcy Court for the Southern District of New York, Cause No. 25-12220-pb ("Bankruptcy Proceeding"), entered on October 27, 2025.

v. Exhibit 22 is a copy of photographs documenting the window and water damage to the Property.

5. I am the custodian of records for 800 Bell. The records attached hereto as Exhibits 1-22 were kept in the regular course of 800 Bell's business, and it was the regular course of business of 800 Bell for an employee or representative of 800 Bell with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the records or to transmit information thereof to be included in such record; and the records were made at or near the time or reasonably soon thereafter. Exhibits 1-22 are the original or exact duplicate of the original.

6. On December 30, 2022, BBI, as Borrower, executed the Note in favor of Shorenstein, as Holder. The Note provided that all unpaid principal, together with any then unpaid and accrued interest and other amounts payable, shall be due and payable on the earlier of: (i) 3 years from the date of the Note; or (ii) when, upon or after the occurrence of an Event of Default, such amounts were declared due and payable by the Holder, or made automatically due and payable in accordance with the terms of the Note. *See* Ex. 1.

3

7. Certain obligations due under the Note were guaranteed by Jacobwitz, as Guarantor, in favor of Shorenstein. Pursuant to the Guaranty, among other things, Jacobwitz guaranteed and promised to pay to Shorenstein, any obligations, debts, damages, losses, costs, expenses, fines, penalties, charges and other sums, including legal fees, which Lender actually incurred as a direct consequence of (i) material physical waste to the Property caused by an act or failure to act by BBI or Jacobwitz which waste was not repaired or replaced with good workmanship and material of an equal or better quality and value; (ii) the failure to pay property or other taxes, assessments or charges related to the Property prior to the delinquency thereof; (iii) any litigation or other legal proceeding relating to the $14,500,000.00 loan ("Loan") filed by BBI or Jacobwitz that delays, opposes, impedes, obstructs, hinders, enjoins or otherwise interferes with or frustrates the efforts of Lender to execute any rights and remedies available to it. *See* Ex. 2.

8. The Guaranty also contained certain financial covenants. Specifically, Jacobwitz was required, during the term of the Loan, to maintain, in the aggregate: (i) liquidity of not less than $10,000,000.00; and (ii) a net worth of not less than $50,000,000.00, excluding equity in the Property. Additionally, section 8 of the Guaranty required Mr. Jacobwitz to deliver within 120 days after his fiscal year end, current unaudited personal financial statements prepared in accordance with GAAP (including without limitation, an income and expense statement, balance sheet and statement of cash flow). *See* Ex. 2.

9. Pursuant to the Deed of Trust, BBI, as Grantor, irrevocably sold, transferred, granted, conveyed, assigned and warranted to Trustee, its successors and assigns, in trust, with power of sale and right of entry and possession, all of BBI's present and future estate, right, title and interest in and to the Property. *See* Ex. 3. The Property, a 45-story, 1,200,000 square foot building, built in 1963, was formerly the headquarters of Exxon-Mobil.

10. By Purchase Agreement, 800 Bell, as Buyer, and Shorenstein, as Seller, agreed that 800 Bell would purchase the Note, together with all rights, title, interest, lien, security interests governing the Note, including without limitation, the Deed of Trust. *See* Ex. 4.

11. On April 28, 2025, pursuant to Assignment and Conveyance, Shorenstein, as Seller under a certain Note Purchase Agreement, sold, transferred, assigned, set over, and conveyed to 800 Bell, all right, title and interest of, in and to the Note, the Deed of Trust, the Guaranty, and certain UCC-1 financing filings. *See* Ex. 5. The sale was evidenced by the Allonge which became part of the Note. *See* Ex. 6.

12. On April 29, 2025, pursuant to Assignment, for value received, Shorenstein, as Seller, conveyed all of its right, title, and interest in and to the Deed of Trust to 800 Bell, as Buyer, together with all right, title and interest in and to the Note or other obligations secured thereby. *See* Ex. 7.

13. Beginning in May 2025, 800 Bell, through legal counsel, Bradley E. Rauch, began notifying BBI and Jacobwitz of the failure to comply with the Deed of Trust. For example, on May 12, 2025, 800 Bell advised BBI that it had failed to make timely payment of property taxes to the Harris County Tax Assessor-Collector pursuant to section 2.04(a) of the Deed of Trust. *See* Ex. 8. The property taxes were subsequently late paid.

14. On May 28, 2025, 800 Bell notified BBI and Jacobwitz that a visual inspection of the Property showed numerous broken windows on multiple sides of the Property, in violation of section 2.05(a)(ii) of the Deed of Trust which required BBI, at its sole cost and expense, to keep the Property in good order, condition, and repair. BBI and Jacobwitz were also notified that there were significant conditions with the Property electrical and HVAC systems, arising, in part, from water damage and continuing standing water in the basement. Demand was made upon BBI to cure all of the broken windows and repair and restore the electrical and HVAC systems to good working order. BBI was provided 30 days within which to make sure repairs. *See* Ex. 9.

15. On June 30, 2025, 800 Bell notified counsel for BBI and Jacobwitz that on July 8, it sought to inspect the Property, as permitted by section 2.05(b) of the Deed of Trust, in order to ascertain BBI's compliance with loan documents, to examine the condition of the Property, and to inspect the premises. *See* Ex. 10. The Deed of Trust required BBI to cooperate with the performance of these inspections. *See* Ex. 3. 800 Bell also notified BBI that there had been no evidence that BBI had taken any steps to cure and remedy the conditions of the Property, as previously demanded. Finally, 800 Bell demanded that BBI provide certain documentation relative to condition and maintenance of the Property. *See* Ex. 10. Access to the Property was not granted.

16. On July 9, 2025, as required by Article 3 of the Deed of Trust, 800 Bell requested from BBI evidence of copies of policies of certificates of insurance for the "Required Insurance" as defined in section 3.02 of the Deed of Trust, including "all risk" or "special perils" insurance and commercial general liability insurance. *See* Exs. 3 and 11. 800 Bell also requested that BBI provide written confirmation that all such policies had been continuously active without any lapses since inception, as also required under section 3.02. *See* Ex. 11.

17. On July 11, 2025, by Second Notice of Inspection and Demand for Guarantor Financials, 800 Bell notified Jacobwitz and BBI that on July 15, it and its representative, would conduct an inspection of the Property, as permitted by section 2.05(b) of the Deed of Trust. *See* Exs. 12 and 3. 800 Bell also made demand on Jacobwitz to provide evidence of his compliance with paragraph 7 of the Guaranty, including evidence of minimum liquidity and net worth. *See* Ex. 12 and 2. Access to the Property was not granted. Jacobwitz never provided the demanded financial evidence.

18. On July 14, 2025, by Notice of Default, 800 Bell sent a Notice of Default to BBI. *See* Ex. 13. The Notice stated that despite request, BBI had failed to provide any documentation or other support that it was diligently pursuing curing its defaults under the Deed of Trust. Moreover, despite multiple requests, access to the Property was denied, a violation of the Deed of Trust. *See* Ex. 3. For the reasons described in the Notice, and in the previous correspondence sent to BBI, 800 Bell declared a formal Event of Default under the loan documents and notified BBI that the entire loan balance was accelerated and default interest at the Default Rate ( as described in the Note) had begun to accrue. *See* Ex. 13. In accordance with section 5.01 of the Deed of Trust, 800 Bell also notified BBI that all Rents and Profits (as defined in the Deed of Trust) received by BBI (including Rents and Profits for parking or garage operating agreements) should be remitted to 800 Bell, to be applied

5

to the amounts owing on the Note and under the Deed of Trust. BBI was further notified that 800 Bell had still not received evidence of the required insurance coverages that were enumerated in Article 3 of the Deed of Trust. No monies were ever remitted to 800 Bell by BBI.

19. In response to the July 14 Notice of Default, BBI wrote 800 Bell's legal counsel putting up roadblocks to 800 Bell's right to inspect the Property, all of which are not contemplated by the Deed of Trust. *See* Exs. 14 and 3.

20. On July 16, 2025, 800 Bell, through legal counsel, refuted all of the claims of BBI's lawyer in his July 14 correspondence, stating that 800 Bell had given proper notices to BBI, which has failed to comply with its Deed of Trust obligations. *See* Ex. 15.

21. On August 6, 2025, 800 Bell made another demand for inspection of the Property. *See* Ex. 16. Access to the Property was denied.

22. On August 7, 2025, BBI provided Property insurance certificates. However, by correspondence dated August 11, entitled "Notice of Insurance Default," 800 Bell informed BBI that the Certificate of Insurance was not sufficient and did not evidence compliance with Section 3.02 of the Deed of Trust. *See* Ex. 17. BBI was also informed that 800 Bell was not retracting its acceleration and demand for payment of the Note and indebtedness secured by the Deed of Trust, nor was 800 Bell waiving any of its other rights under the Note, Deed of Trust, or any other documents executed in connection with the Loan. *See* Ex. 17.

23. On September 11, 2025, 800 Bell made a "Fourth Demand for Inspection" of the Property stating that 800 Bell wanted to inspect the Property on September 15, 16, or 17. *See* Ex. 18. There was no response to the demand by BBI or Jacobwitz.

24. BBI has defaulted under the Note and Deed of Trust. Jacobwitz has committed an event of default under the Guaranty. Specifically, BBI and Jacobwitz have (i) failed to provide access to the Property, despite 4 prior requests, (ii) failed to provide certified copies of the actual insurance policies and copies of all endorsements thereto; (iii) failed to provide Jacobwitz's required financial information to evidence his financial covenants; (iv) failed to deliver all income of the Property received from the parking garage constituting improvements covered by the Deed of Trust; (v) failed to maintain the Property, as further evidenced by TXU Energy Retail Company terminating the electrical service to the Property, as a result of BBI failing to pay the electric bill; and (vi) allowed material waste of the Property caused by any act or failure to act by BBI, a breach of the Guaranty. *See* Ex. 18.

25. On October 6, 2025, BBI moved for a temporary restraining order in this case, *see* Ex. 19 ; however, just one day after filing its motion, and before a ruling could be issued, BBI initiated its Bankruptcy Proceeding. *See* Ex. 20.

26. On October 27, 2025, BBI's Bankruptcy Proceeding was dismissed. *See* Ex. 21.

27. During the week of November 1, 2025, a representative of 800 Bell took additional photographs of exterior damage to the Property. *See* Ex. 22.

28. As of the date of this Declaration, over $14,500,000 is owed on the Note by BBI to 800 Bell.

29. I declare under penalty of perjury that the foregoing is true and correct."

Executed on November 11, 2025

_____
Thomas Lee